Philip D. Irwin (#012128)
**NEAL & HARWELL, PLC**
1201 Demonbreun Street
Suite 1000
Nashville, TN  37203
(615) 244-1713 – Telephone
(615) 726-0573 – Fax
pirwin@nealharwell.com
*Attorney for Defendant Christina Rahm Cook*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **RAIN INTERNATIONAL, LLC., a Delaware limited liability company**<br>        **Plaintiff,**<br><br>**vs.**<br><br>**CHRISTINA RAHM COOK** *dba* **MERCI DUPRE, LLC; PERSONALIZED HEALTHCARE SOLUTION, LLC** *dba* **BOOTHEEL LABS; SIMPLY WHOLEISTIC INC.** *dba* **ROOT, INC.; CLAYTON THOMAS** *dba* **ROOT WELLNESS; PREDICTED HEALTH VENTURES, LLC; SUSAN CORBO; INTERNATIONAL SEED NUTRITION SOCIETY, LLC; and DOES 1 through 5,**<br>        **Defendants**<br>        **.** | **MOTION OF DEFENDANTS CHRISTINA RAHM COOK, PREDICTED HEALTH VENTURES, LLC, AND INTERNATIONAL SEED NUTRITION SOCIETY, LLC TO DISMISS FOR LACK OF STANDING, LACK OF PERSONAL JURISDICTION OR, ALTERNATIVELY, PURSUANT TO THE DOCTRINE OF  FORUM NON CONVENIENS**<br><br><br>**Case No. 2:20-cv-00537-JHP**<br><br>**Judge Jill N. Parrish** |

Come now Defendants Christina Rahm Cook ("Cook"), individually and on behalf of Predicted Health Ventures, LLC and International Seed Nutrition Society, LLC, to dismiss the suit filed against them pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, because Plaintiff lacks standing to bring this suit or, in the alternative, to dismiss the Plaintiff's Complaint against them pursuant to the doctrine of *forum non conveniens*.

## <u>TABLE OF CONTENTS</u>

I.      RELIEF REQUESTED AND GROUNDS FOR RELIEF ...................................................4

II.     BACKGROUND ...................................................................................................................6

III.    ARGUMENT.........................................................................................................................8

    A. Ms. Cook is Not Subject to General or Specific Jurisdiction in Utah ........................9

       1.   General Personal Jurisdiction Over Cook Does Not Exist ....................................10

       2.   Specific Personal Jurisdiction Over Ms. Cook Does Not Exist.............................11

    B. Plaintiff Lacks Standing to Bring this Lawsuit ...........................................................14

    C. Alternatively, the Doctrine of Forum Non Conveniens Requires Dismissal of Plaintiff's Complaint ....................................................................................................................15

       1.   The Location of the Primary Parties and the Location Where the Fact Situation Creating the Controversy Arose Weigh in Favor of Dismissal............................16

       2.   The Ease of Access to Proof, Including the Availability and Costs of Obtaining Witnesses Weighs in Favor of Dismissal............................................................18

       3.   The Enforceability of Any Judgment Weighs in Favor of Dismissal....................18

       4. The Burden o the Court Weighs in Favor of Dismissal.........................................18

IV.     CONCLUSION....................................................................................................................21

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)............................................. 10, 13, 14

*Calder v. Jones*, 465 U.S. 783, 790–91 (1984)........................................................................... 13

*Celtig, LLC v. Patey*, No. 2:17-cv-01086-JNP, 2018 U.S. Dist. LEXIS 166665, at *11–12 (D. Utah Sep. 26, 2018) ....................................................................................................................... 11

*Clear-One v. Revolabs, Inc.,* 2016 UT 16, ¶ 26, 369 P.3d 1269 ) ............................................. 15

*Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) .............................................................. 10, 11

*Dworkin v. Hustler Magazine, Inc.*, 647 F. Supp. 1278 (D.Wyo. 1986) ...................................... 22

*Energy Claims Ltd. V. Catalyst Inv. Grp. Ltd.*, 2014 UT 13 .......................................... 16, 17, 20

*Fallhowe v. Hilton Worldwide Inc.*, 14-cv-02870, 2015 U.S. Dist. LEXIS 114640 (D. Colo. Aug. 28, 2015.............................................................................................................................. 18

*Fireman's Fund Ins. Co. v. Greenberg*, Case No. 07-CV-1566, 2008 U.S. Dist. LEXIS 88792 (S.D. Cal. Feb. 26, 2008)..................................................................................................... 12

*Fischer v. Magyar Allamvasutak Zrt*, 777 F3d 847, 869 (2d Cir. 2015) ...................................... 22

*Gas Sensing Tech. Corp. v. Ashton*, No. 18-8089, 2020 U.S. App. LEXIS 192, at *14–15 (10th Cir. Jan. 6, 2020)....................................................................................................................... 10

*Haik v. Jones*, 427 P.3d 1155 (Utah 20-18). ............................................................................ 15

*Koch v. Pechota*, 744 Fed. App'x. 105, 110 (3d Cir. 2018) ....................................................... 10

*Logan v. Logan*, No. 1:11-CV-00165-DB, 2012 U.S. Dist. LEXIS 56680, at *14–15 (D. Utah Mar. 22, 2012) ......................................................................................................................... 10, 11

*McClory v. Estate of Keen*, No. 2:15- cv-778-PMW, 2016 U.S. Dist. LEXIS 139749, at *4-5 (D. Utah Oct. 6, 2016)............................................................................................................... 10

*Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017)................. 9, 12

*Piper Aircraft Co. v. Reyno.*, 454 U.S. 235, 254 n.22 (1981)...................................................... 16

*Richcourt Allweather Fund, Inc. v. Midanek*, Civil No. 13-4810, (D. N.J. Apr. 21, 2014) ......... 10

*Rush v. Savchuk*, 444 U.S. 320, 328 (1980)............................................................................... 10

*Shrader v. Biddinger*, 633 F.3d 1235, 1239.................................................................................. 9

*Span Constr. & Eng'g, Inc. v. Stephens*, No. CIV-F-06-0286 AWI DLB, 2006 U.S. Dist. LEXIS 48896, at *19 (E.D. Cal. July 5, 2006) ................................................................................ 10

*State ex rel. W.A.*, 2002 UT 127, 63 P.3d 607, 612 (Utah 2002)................................................. 12

*Summa Corp. v. Lancer Indus.*, 559 P.2d 544, 545-546 (Utah 1977)........................................... 15

*Tombstone Exploration Corp. v. Eurogas, Inc.*, No. 2:15-cv-00195-DN, 2015 U.S. Dist. LEXIS 138658, at *6 (D. Utah Oct. 8, 2015).................................................................................. 12

*Waddoups v. Amalgamated Sugar Co.*, 54 P3d 1054, 1059 (Utah 2002)...................................... 19

*Westmoreland v. CBS*, 8 Med. L. Rptr. 2593 (D.C. S.C. 1982).................................................. 21

## I.   <u>RELIEF REQUESTED AND GROUNDS FOR RELIEF</u>

Defendant Christina Rahm Cook ("Cook") brings this motion, individually and on behalf of Predicted Health Ventures, LLC ("Predicted") [1] and International Seed Nutrition Society, LLC ("ISNS") [2] requesting dismissal of Plaintiff's causes of action against each of the afore-mentioned Defendants due to lack of standing, lack of personal jurisdiction or, alternatively, based upon the doctrine of *forum non conveniens*. The bases for Cook's Motion to Dismiss are more particularly described as follows:

1.      Plaintiff knowingly misrepresents to this Court that it has personal jurisdiction over Cook because the parties "selected Utah as the jurisdiction to resolve any dispute."  Complaint, ¶10.  Plaintiff is aware that the quoted language is set forth in a contract no longer in effect. Plaintiff is also aware, but fails to acknowledge to the Court, that the 2017 agreement referenced in its Complaint was subsequently amended by that certain "Amendment to Services Agreement" dated July 26, 2018.  Declaration of Christina Rahm Cook, ¶ 27, Ex. D.  Finally, Plaintiff is fully aware and has acknowledged in writing that it breached the 2017) Agreement and its amendment, that the 2017 Agreement was terminated as of the end of October 2015, and that as a result, the 2017 agreement was long ago rendered null and void, superceded by a subsequent contract between the parties dated December 1, 2019, a copy of which is attached to the Declaration of Christina Rahm Cook, ¶ 28, Ex. E.

Plaintiff further represents to the court that it has general and/or specific jurisdiction over Cook because Cook regularly transacts business in Utah, which is also baseless.

2.      As a technical matter, the Plaintiff also lacks standing to bring this suit.  As stated, Plaintiff brought this suit based on a November 28, 2017 Agreement between a Delaware limited

---

[1] Ms. Cook was the sole shareholder of Defendant Predicted Health Ventures, LLC, a Wyoming limited liability company chartered on June 29, 2016 and administratively dissolved on August 9, 2017.
[2] Cook is not a member of ISNS as ISNS has no members.  Cook, however, is the only one of four organizers of ISNS in this action.

liability company, which, upon information and belief, was dissolved on or about December 31, 2018 and was not reinstated until approximately three months ago, April 15, 2020.  Declaration of Christina Rahm Cook, ¶ 20, Ex. "B."  Plaintiff is also aware that the last contract between the parties dated December 1, 2019 was <u>not</u> between Cook and Rain International, LLC (Delaware), but, rather, between Cook and Rain International, LLC (Utah).  The 2019 Agreement explicitly rendered null and void all prior agreements between Cook and Rain International, LLC, including the November 28, 2017 Agreement upon which Plaintiff relies for its claims for relief.  As a technical matter therefore was not a party to the final (2019) contract between the parties and thus lacks standing to bring suit regarding that contract.

3.      Alternatively, Defendant Cook seeks dismissal of this action based upon the doctrine of *forum non conveniens*.  Each of the claims made by Plaintiff in this lawsuit are alleged to have occurred in Tennessee, not Utah.  Defendant respectfully submits that Plaintiff has chosen Utah as the forum for this action for the express purpose of causing trouble, harassment, inconvenience and hardship to Cook and the other defendants because it knows each of the claims in its lawsuit are based on defendants, witnesses and documentation located in Brentwood, Tennessee.  Each of Plaintiff's claims allege action and/or conspiracy involving Cook, Simply Wholeistic, Inc. (a Tennessee Corporation), Personalized Healthcare Solution, LLC (a Tennessee limited liability company), Predicted Health Ventures, LLC, a defunct Wyoming limited liability company that has its principal place of business in Brentwood, Tennessee, and International Seed Nutrition Society, LLC, a Missouri limited liability company whose work is performed in Brentwood, Tennessee.

Setting aside the numerous misrepresentations in Plaintiff's Complaint, Plaintiff is well aware that Cook has never transacted business within the state of Utah and, in fact, Plaintiff has engaged in numerous conversations with Ms. Cook regarding her demand that any services she provided Rain would be from her office in Brentwood Tennessee, and that she seldom visited Utah.

## II.    BACKGROUND

1.      Rain International, LLC ("Rain") claims to be a "nutrition and wellness company" distributing dietary supplements and personal care products through a direct sales model through a network of individual distributors." Complaint, ¶¶12-13.

2.      In its Complaint, Rain (relying upon the null and void November 28, 2017 Agreement) alleges Cook used Rain's confidential information to develop competing business ventures.   Complaint, ¶34; that Cook caused Plaintiff to hire her based upon Cook's alleged misrepresentations regarding her credentials.  *Id.*, ¶¶17-25; that Rain subsequently learned Cook's credentials were falsified.   *Id*., ¶26; that Rain has been damaged monetarily and has sustained damage to its reputation and good will because of Cook's misrepresentations.  *Id.*, ¶¶27-28; and that Cook used her time and Rain's resources to develop competitive products using confidential information she obtained from Rain.  *Id.* ¶33.

3.      Based upon the foregoing, Rain asserts five (5) causes of action against Cook, namely, breach of contract, breach of the covenant of good faith and fair dealing, fraudulent and/or negligent misrepresentation and unjust enrichment, and conspiring with others to commit such alleged wrongful conduct.  *Id*. ¶¶59-65, 66-89, 90-94, 102-06.

4.      Cook first became aware of Rain International in 2016 when Rain International reached out to her through one of its former officers, Ryan Fry.  Declaration of Christina Rahm Cook, ¶ 24.  Mr. Fry was aware of Cook's experience and success and reputation as a research scientist and invited Cook to come to Salt Lake City and meet with representatives of Rain to consult with them on problems Rain International was experiencing in the formulation of certain of its skincare products.  *Id*.  Rain (Mr. Fry) contacted Cook by telephone and asked her to meet with him and other Rain personnel in Salt Lake City to consult with Rain regarding the aforementioned

formulation problems and in connection with a skincare presentation at an upcoming convention in Las Vegas.  *Id*. at ¶ 24-26

5.      Cook accepted Rain's invitation to visit with them at their location in Salt Lake City Utah and ultimately agreed to help them on a project-only basis concerning skincare products, as described above.  *Id*. at ¶ 25.

6.      Following completion of Cook's project work on Rain's skincare products, Rain sought to hire Cook on a full-time basis.  Ultimately, the parties signed contracts dated February 22, 2017, November 28, 2017, July 16, 2018 and December 1, 2019.  Each of these contracts retained Cook's services, not as an employee of Rain, but as an independent contractor serving as Rain's International Chief Director of its Scientific Advisory Board.  *Id*., at ¶ 31.

7.      Plaintiff Rain breached the 2017 Agreement during the first two (2) months it was in effect, and continued to be in breach of that contract until the parties finally acknowledged that the 2017 Agreement was null and void 12 months from its execution, and would be replaced by a new contract for the purpose of curing the deficiencies of the 2017 Agreement and to renegotiate and discuss the terms of a new independent contractor agreement for Cook going forward.  *Id.*, at ¶ 30(a),(c), Ex.'s "F" and "H."

8.      In or about March 2020, while already in breach of the newly-executed December 1, 2019 Agreement with Cook, Rain breached the terms of the 2019 Agreement by wrongfully terminating the agreement with Cook based upon false allegations that Cook breached a duty of confidentiality she owed to Rain pursuant to their contract, and that Cook falsified her credentials.

9.      In this action, Rain alleges causes of action against Cook as follows:

(a)      Breach of contract and breach of the covenant of good faith and fair dealing, evidently in reliance on the null and void November 2017 agreement;

(b)      Alleged negligent misrepresentation by Cook of her education and

1experience and credentials upon which Rain claims to have relied on in entering into the long-defunct 2017 agreement;

(c)     Alleged fraud/fraudulent misrepresentation by Dr. Cook regarding her education experience and credentials;

(d)     Claim for civil conspiracy against Cook and the other named Defendants in which it is alleged that the Defendants conspired to have Cook, without Rain's consent, promote and support alleged business dealings competitive to rain;

(e)     Cook's alleged wrongful use of Rain's supposed intellectual property, work product and know how; disclosing rain's confidential business information; and developing businesses that were competitive to rain's business, all in violation of the void to 2017 agreement.

10.     Cook has never lived or resided in Utah and, in fact, lived in Brentwood Tennessee during the relevant time period.  *Id.*, at ¶ 1.

11.     Cook does not own any real property or any other assets in Utah, nor is Cook a manager, officer or director of any Utah business.  *Id.*, at ¶ 3.

12.     Cook has never had an employment agreement with any Utah business and specifically, with Rain.  Rather, Rain contracts with Cook on an independent contractor basis and recognized on several occasions that Cook's work for Rain occurred exclusively in Cook's office in Brentwood Tennessee.  *Id.*, at ¶¶ 5, 31.

13.     Cook has never made any sales in Utah, does not vacation in Utah and has never transacted business to the extent she would be expected to be sued there.  *Id.*, at ¶ 4.

## III.   <u>ARGUMENT</u>

As stated previously, there are three separate bases upon which this Court should dismiss Plaintiff's action against Dr. Cook. Primarily, Dr. Cook has no connection with Utah that would

justify exercising personal jurisdiction over her. In addition, the court should dismiss this action based upon the doctrine of *forum non conveniens* since, even assuming the allegations made by Plaintiff are true, they occurred exclusively in Tennessee. Finally, as a technical matter, Rain International, a Delaware LLC, is not a party to the final December 1, 2019 contract between the parties, namely, the December 1, 2019 Independent Contractor Services Agreement between Cook and Rain International, LLC, a Utah limited liability company.

A. **Ms. Cook is Not Subject to General or Specific Jurisdiction in Utah**

When personal jurisdiction is contested at the pleading stage under Rule 12(b)(2) of the Federal Rules of Civil Procedure, courts may determine whether it exists based on the pleadings and affidavits. *See, Shrader v. Biddinger*, 633 F.3d 1235, 1239. the burden of establishing personal jurisdiction.   *Id.*   Under the due process clause, a court may exercise personal jurisdiction over a Defendant so long as (1) the Defendant "purposefully established minimum contacts with the forum State" and (2) the assertion of personal jurisdiction comports with notions of "fair play and substantial justice." *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017) (quoting *Burger King Corp v. Rudzewicz*, 471 U.S. 462, 476 (1985)).

"To obtain personal jurisdiction over a nonresident Defendant in a diversity action, a Plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *a Sensing Tech. Corp. v. Ashton*, No. 18-8089, 2020 U.S. App. LEXIS 192, at *14–15 (10th Cir. Jan. 6, 2020). Jurisdiction over nonresident Defendants can be either general jurisdiction (where the Defendant's contacts with the state are "so constant and pervasive as to render it essentially at home in the forum State," *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014)) or specific jurisdiction (which focuses on "the relationship among the Defendant, the forum, and the

litigation," *Walden v. Fiore*, 571 U.S. 277, 284 (2014)). Rain cannot meet its burden to prove personal jurisdiction over Ms. Cook.

### 1.    General Personal Jurisdiction Over Cook Does Not Exist.

General jurisdiction is very limited. The U.S. Supreme Court in *Daimler AG v. Bauman* significantly restricted the instances when a state may exercise general jurisdiction. 571 U.S. 117 (2014). The Court clarified that "only a limited set of affiliations will render a Defendant" subject to general jurisdiction. An individual's contacts must be "so continuous and systematic as to render [her or him] essentially at home in the forum State." *McClory v. Estate of Keen*, No. 2:15- cv-778-PMW, 2016 U.S. Dist. LEXIS 139749, at *4-5 (D. Utah Oct. 6, 2016). When individuals conduct business that requires their occasional presence in a state, courts do not find sufficient contact for general jurisdiction. *Span Constr. & Eng'g, Inc. v. Stephens*, No. CIV-F-06-0286 AWI DLB, 2006 U.S. Dist. LEXIS 48896, at *19 (E.D. Cal. July 5, 2006); *Logan v. Logan*, No. 1:11-CV-00165-DB, 2012 U.S. Dist. LEXIS 56680, at *14–15 (D. Utah Mar. 22, 2012) (observing that "general jurisdiction over non-resident Defendants has been upheld by the Supreme Court only once"). Thus, a "court only has general jurisdiction over an individual domiciled in the state. For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Celtig, LLC v. Patey*, No. 2:17-cv-01086-JNP, 2018 U.S. Dist. LEXIS 166665, at *11–12 (D. Utah Sep. 26, 2018) (citations omitted).

Specifically, ownership of property in the forum, travel to the forum, and past residence in the forum are insufficient to subject a defendant to general jurisdiction. *Rush v. Savchuk*, 444 U.S. 320, 328 (1980) (ownership of property in forum state insufficient for general jurisdiction); *see also Koch v. Pechota*, 744 Fed. App'x. 105, 110 (3d Cir. 2018) ("However, an individual is 'at home' where they are domiciled—in other words, an individual's 'true, fixed and permanent home and place of habitation.  Helewitz did not reside in New Jersey. Teaching CLE classes does not make him 'at home' in New Jersey."); *Richcourt Allweather Fund, Inc. v. Midanek*, Civil No. 13-4810, 2014 U.S. Dist. LEXIS 54679, at *12–16 (D. N.J. Apr. 21, 2014) (ownership of

vacation home and occasional trips to forum state insufficient for general jurisdiction); *Fireman's Fund Ins. Co. v. Greenberg*, Case No. 07-CV-1566, 2008 U.S. Dist. LEXIS 88792, at *10–11 (S.D. Cal. Feb. 26, 2008) (holding that defendants' purchase of a vacation home and frequent visits to it insufficient for general jurisdiction); *Logan v. Logan*, Case No. 11-cv-00165- DB, 2012 U.S. Dist. LEXIS 56680, at *13–17 (D. Utah Mar. 23, 2012) (extensive vacationing in forum state insufficient for general jurisdiction).

Defendant Cook's contacts with Utah do not approach the type of contact courts have found sufficient to support the Court's exercise of personal jurisdiction over her. Plaintiff understood at all times that Cook performed all services for Rain from her Brentwood, Tennessee office and, in fact, Rain helped pay the expenses to maintain Cook's office in Tennessee. Ms. Cook spent far more time in service to Rain in Ukraine, Hungary and Vietnam than in Utah. Declaration of Christina Rahm Cook, ¶ 32. As is evident from Cook's Declaration, Cook has been adamant with Rain from the beginning that she would not perform services for Rain in Utah but, rather, in Brentwood, Tennessee. At most, she traveled 3 to 4 times to Utah annually for an overnight trip. *Id.*, at ¶ 31. Cook's paltry contact with Utah is insufficient for this Court to exercise general jurisdiction over her.

Cook has not made frequent visits to Utah. She does not "make her home" in Utah nor does she own any property in Utah. Where, as here, a non-resident's business activities require only occasional presence in a state, courts have held that such casual contacts are insufficient to establish general jurisdiction.

### 2.      Specific Personal Jurisdiction Over Cook Does Not Exist.

In Utah, the test for determining whether specific personal jurisdiction exists over a nonresident defendant involves two considerations:

First, the court must assess whether Utah law confers personal jurisdiction over the

nonresident defendant. This means that a court may rely on any Utah statute affording it personal jurisdiction, not just Utah's long-arm statute. Second, assuming Utah law confers personal jurisdiction over the nonresident defendant, the court must assess whether an assertion of jurisdiction comports with the due process requirements of the Fourteenth Amendment.

*State ex rel. W.A.*, 2002 UT 127, 63 P.3d 607, 612 (Utah 2002), *cert. denied*, 538 U.S. 1035, 123 (2003). Given that "Utah's long-arm statute is co-extensive with federal due process limits," the determinative test is whether jurisdiction over Cook comports with due process requirements, namely whether there are sufficient minimum contacts between the defendant and the plaintiff's chosen forum. *Greer v. Safeway*, 317 Fed. App'x. 838, 841 (10th Cir. 2009); *see also* Utah Code § 78B-3-205 (Utah long-arm statute).

Minimum contacts exist where the defendant has "purposefully directed [her] activities toward the forum jurisdiction and where the underlying action is based upon activities that arise out of or related to the defendant's contacts with the forum." *Tombstone Exploration Corp. v. Eurogas, Inc.*, No. 2:15-cv-00195-DN, 2015 U.S. Dist. LEXIS 138658, at *6 (D. Utah Oct. 8, 2015) (*quoting Trujillo v. Williams*, 465 F.3d 1210, 1218 (10th Cir. 2006)). The minimum contact "requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or third person." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal quotation marks and citations omitted). An out-of-state defendant directs activities at the forum either by "purposefully avail[ing] itself of the privilege of conducting activities within the state" or when "defendant's *intentional* conduct targets and has substantial harmful effects in the forum state." *Old Republic*, 877 F.3d at 918 (quoting *Burger King*, 471 U.S. at 475) and *id.* at 907 (quoting *Calder v. Jones*, 465 U.S. 783, 790–91 (1984)). This particularized inquiry "focuses more on a defendant's intentions—where was the 'focal point' of its purposive efforts." *Dudnikov v. Chalk & Vermilion Fine Arts*, 514 F.3d 1063, 1075 (10th Cir. 2008). To be expressly aimed at the forum state, a defendant's actions must do more than individually target a

known forum resident.  *Id.* at 1074 n.9.  Rather, "the forum state itself must be the focal point of the tort." *Id. see also Far W. Capital v. Towne*, 46 F.3d 1071, 1080 (10th Cir. 1995) (noting that the plaintiff suffering the "financial effects" of tortious conduct in the forum is insufficient to satisfy the minimum contacts inquiry).

Cook's contacts with Utah fall far short of the standards required to exercise specific personal jurisdiction over her.  Cook did not "purposely direct [her] activities toward [Utah] nor do the causes of action alleged by Rain occur or result from any activities that have arisen by Cook's limited contacts with Utah.  Rain knew that all work performed by Cook pursuant to its independent contractor's agreements with Cook were to be performed in Tennessee as well as several foreign countries to which Cook traveled on behalf of Rain.  In essence, the State of Utah had nothing to do with Cook's services under the parties' agreements.  An occasional trip to Utah does not equate to one "purposefully availing herself of the privilege of conducting activities "within Utah nor can it be said that Cook at all target Utah concerning in the services she provided to Rain; in fact, far from so."  It is absurd for Plaintiff to argue that "the forum state [Utah] was the focal point of any of Ms. Cook's alleged misconduct, even assuming Plaintiff's allegations were true, Utah was not the "focal point" of any tort Ms. Cook is alleged to have committed.

Subjecting Cook to jurisdiction in Utah would cause Cook to be "haled into a jurisdiction solely as the result of "random, fortuitous, or attenuated contacts," with Utah and/or due solely to the unilateral activity of another party or third person."  *Burger King Corp. v. Elizabeth Rudzewicz*, 471 U.S. 462, 475 (Sup. Ct. 1985).  As stated, Cook's travels on behalf of Rain would make her much more likely be headed into Ukraine, Hungary or Vietnam, as she spent far more time on Rain's behalf in those countries than in the State of Utah.

Finally, Rain cannot argue that because it is located in Utah and necessarily felt the effects of any alleged tortious behavior in Utah, jurisdiction over Cook is proper.  The minimum contacts "inquiry principally protects the liberty of the nonresident defendant, not the interests of the plaintiff." *Clear-One v. Revolabs, Inc.*, 2016 UT 16, ¶ 26, 369 P.3d 1269 (citing *Walden* 571 U.S. 277).  Thus, the "plaintiff cannot be the only link between the defendant and the forum" and "a plaintiff's contacts with the defendant and

the forum [cannot] drive the jurisdictional analysis." *Id*. ¶ 33. Even when the defendant "intentionally injured [the plaintiff] with full knowledge" that the plaintiff was a Utah company, this is insufficient to establish jurisdiction over the defendant. *Id*. ¶ 28. It is the defendant's conduct that matters, not where the plaintiff resides and thus "feels" any alleged injury. Here, all of the conduct alleged by Rain necessarily occurred in Tennessee.

Accordingly, because this Court does not have personal jurisdiction over Cook, Rain's claim against Cook should be dismissed.

### B.    Plaintiff Lacks Standing to Bring This Lawsuit.

The "first and most widely employed standard" for establishing standing requires a Plaintiff to show some distinct and palpable injury of his rights or personal stake in the outcome of the dispute.  The requirement is generally justified on the grounds that, in the absence of Plaintiff having an individual stake in the outcome of a particular case, courts would be drawn into nonjusticiable cases or generalized grievances.  *Haik v. Jones*, 427 P.3d 1155, 1159 (Utah 20-18).

For reasons yet unclear, Plaintiff has had during its history as many as three (3) separate legal entities by the name of Rain International, LLC.  The first of these was a Delaware corporation which, according to the Utah Secretary of State, was created and registered to do business in Utah on or about September 9, 2011, but which was dissolved on or about December 31, 2018.  On or about June 7, 2019, a "new" Rain International, LLC was born, this time as a Utah limited liability company.  The Utah limited liability company did not live long, however, and was voluntarily dissolved by Travis Perry, one of Rain's officers, on April 15, 2020.  In place of the Utah limited liability company, Rain International, LLC was either resurrected or born again as a Delaware corporation the same day the Utah corporation was dissolved, namely, April 15, 2020.

The Plaintiff in this case appears to be either a new or resurrected Delaware version of Rain International, LLC, but that resurrection occurred well after the 2017 Agreement which was replaced by the 2019 Agreement between Cook and Rain International, LLC, the Utah limited liability company.  The 2019 Agreement, the last and final contract between Rain International, LLC and Cook, was drafted and executed by Rain-Utah, the same limited liability company that voluntarily dissolved in April 2020.  The Plaintiff in this case claims to be some iteration of the Delaware corporation which is not a party to the last contract executed between Rain and Cook.

In view of the foregoing, the only business with standing to bring a breach of contract action against Cook is the recently-deceased Utah limited liability company.  The Plaintiff in this case is a stranger to that contract, has no interest in it and, as a result, lacks standing to bring this suit as it is not a party to the 2019 Agreement.

### C.    Alternatively, the Doctrine of *Forum Non Conveniens* Requires Dismissal of Plaintiff's Complaint.

The doctrine of forum *non conveniens* protects defendants from plaintiffs who "select[] . . . remote court[s] where added time, trouble and expense would result in unreasonable inconvenience and hardship to the defendant[s], when the cause could better be tried in a more convenient court."  *Summa Corp. v. Lancer Indus.*, 559 P.2d 544, 545-546 (Utah 1977).  Utah courts conduct a three part analysis. First, "courts must determine whether the plaintiff's choice of forum is entitled to deference." *Energy Claims Ltd. V. Catalyst Inv. Grp. Ltd.*, 2014 UT 13, ¶ 25. Second, courts "determine whether an adequate alternative forum exists." *Id*.  Finally, if an adequate alternative forum exists, courts balance factors of convenience to decide whether the case should stay in Utah or be brought in the "alternative forum suggested by the defendant."  *Id*.

Regarding part one of the analysis, "[a]s a general matter, a plaintiff's choice of forum is entitled to deference when the plaintiff has brought suit in its home jurisdiction," (*id*. at ¶ 30).

Accordingly, this step in the analysis weighs in Plaintiffs' favor.

Next, an alternative forum is available "when the defendant is 'amenable to process' in the other jurisdiction." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981) (quotation omitted). Here, Cook is amenable to service of process in Tennessee and concedes to Tennessee's jurisdiction over her.  As set forth in Cook's Declaration, she demanded (and Rain agreed) that Rain remove from the 2019 Agreement any requirement that she be subject to suit in Utah.  And while there may be some ways in which litigating in Tennessee courts will differ from litigating in Utah courts, those differences do not make the Tennessee courts "so clearly inadequate or unsatisfactory that [there] is no remedy at all. *Piper Aircraft*, 454 U.S. at 254 n.22.  Accordingly, the second part of the test weighs in favor of dismissal.

Because Tennessee is an adequate alternative forum, the next step is to balance the following five factors:  (1) "the location of the primary parties"; (2) the location "where the fact situation creating the controversy arose"; (3) "the ease of access to proof, including the availability and costs of obtaining witnesses"; (4) "the enforceability of any judgment that may be obtained"; and (5) "the burdens that may be imposed upon the court in question in litigating matters which may not be of local concern."  *Energy Claims*, 2014 UT 13, ¶ 36.

### 1. The Location of the Primary Parties and the Location where the Fact Situation Creating the Controversy Arose Weigh in Favor of Dismissal.

Most of the Defendants are in Tennessee and all of the alleged conduct at issue occurred primarily in Tennessee.  It is true that Ms. Corbo resides in New York, but her inclusion in this lawsuit cannot be taken seriously given Plaintiff's failure to allege any specific conduct on the part of Ms. Corbo.  Cook is said to have violated her duties to Rain by allegedly competing with Rain through primary competitors Personalized Healthcare Solution, LLC and Simply Wholeistic, Inc., and through a conspiracy with Defendant Clayton Thomas.  As Plaintiff admits, Personalized

Healthcare System, LLC is a Tennessee limited liability company located in Brentwood, Tennessee; Simply Wholeistic, Inc. is a Tennessee corporation with its primary place of business in Brentwood, Tennessee; and Clayton Thomas is an individual residing in Brentwood, Tennessee. All of the misconduct occurred in Tennessee by Tennessee companies and Tennessee individuals. While the Plaintiff is in Utah, none of the conduct giving rise to Plaintiffs' claims occurred in Utah.  Thus, the first two factors weigh in favor of Tennessee.

In fact, courts have often dismissed actions where the connections to the forum are limited. For instance, in *Realuyo v. Villa Abrille*, 01 Civ. 10158, 2003 U.S. LEXIS 11529 (S.D. N.Y. 2003), the Southern District of New York dismissed an action for *forum non conveniens* where a New Jersey resident brought a defamation claim against a former Philippine Ambassador to Argentina, a newspaper headquartered in the Philippines, an internet news service, and a columnist from the Philippines, *id.* at *1–*4.   None of the defendants owned any property in the United States. *Id.* at *2–*4.   The plaintiff's conduct that was the subject of the newspaper story occurred in the Philippines, and all witnesses were located in the Philippines. *Id.* at *41–*42. Plus, the relevant law was "the law of defamation of the Philippines." *Id.* at 44. The court concluded that the only factor weighing in favor of keeping the case in New York was the convenience to the plaintiff, but that plaintiff's convenience was outweighed by the other factors. *Id.* at *44. *See also Sui-Yang Huang v. Advanced Battery Techs., Inc.*, 09 CV 8297, 2010 U.S. Dist. LEXIS 51694 (S.D. N.Y. May 26, 2010).

Similarly in *Fallhowe v. Hilton Worldwide Inc.*, 14-cv-02870, 2015 U.S. Dist. LEXIS 114640 (D. Colo. Aug. 28, 2015), the court dismissed an action for *forum non conveniens* where Colorado plaintiffs brought claims against "American corporations doing business in Mexico, *id.* at * 17. The plaintiffs were vacationing in Mexico when chemical fumes poured into their room, causing injuries." *Id.* at *2–*3. The court dismissed for *forum non conveniens* because, among

other things, the injuries occurred in Mexico, the conduct causing the injury occurred in Mexico, there was "strong evidence" that Mexican law would govern, and because "Mexico has a strong interest in regulating resorts' conduct and ensuring foreign tourists' safety." *Id.* at *14–*18.

Here, the connection to the forum is similarly attenuated. Other than the allegations that Plaintiff is a Delaware limited liability company with its principal place of business in Utah, Cook visited Utah on a sporadic and infrequent basis at most. There is no basis for litigating this action in Utah. This case concerns Tennessee citizens and Tennessee companies allegedly committing torts solely in the State of Tennessee.

### 2. The Ease of Access to Proof, Including the Availability and Costs of Obtaining Witnesses Weighs in Favor of Dismissal.

The third factor is the "ease of access to proof, including the availability and costs of obtaining witnesses." This factor also weighs in favor of Tennessee as all of the defendants (save for Ms. Corbo) are there. The Defendants keep their documents in Tennessee. None of the potential third-party witnessed in this case can be compelled to produce any testimony or documents in Utah by the issuance of Utah subpoenas. And while there are potentially witnesses in Utah, there are no witnesses in Utah other than Plaintiff and its representatives.

### 3. The Enforceability of Any Judgment Weighs in Favor of Dismissal.

This factor weighs in favor of dismissal because if Plaintiffs win a judgment in Utah, they can only enforce the judgment in Tennessee against Tennessee defendants. In addition, any Utah judgment may well likely be challenged in Tennessee.

### 4. The Burden on the Court Weighs in Favor of Dismissal.

The final factor is the "burdens that may be imposed upon the court in question in litigating matters which may not be of local concern." *Energy Claims*, 2014 UT 13, ¶ 36. Here, the burden on this Court to litigate this matter is high because, though Utah law applies, almost all witnesses,

parties and documents are in Tennessee.

Plaintiff's claims continue to allege tortious activity occurring in Tennessee.  Regardless of the characterization, however, the "most significant relationship test" always applies.  *Waddoups v. Amalgamated Sugar Co.*, 54 P.3d 1054, 1059 (Utah 2002).   In *Waddoups*, the Court identified several factors used to determine which substantive law to apply:

> a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered."

*Id. citing* Rest. 2d Conflict of Laws § 145(2) (1971).   "[T]hese contacts are to be evaluated according to their relative importance with respect to the particular issue."  *Id.*  In regards to claims that stem from the defendant's unfair use or misuse of plaintiff's information or property, Comment g of the Restatement Second Conflict of Law provides helpful guidance:

> the place of injury is less significant in the case of . . . unfair competition as consists of false advertising and the misappropriation of trade values. The injury suffered through false advertising is the loss of customers or of trade.  Such customers or trade will frequently be lost in two or more states. The effect of the loss, which is pecuniary in its nature, will normally be felt most severely at the plaintiff's headquarters or principal place of business. But this place may have only a slight relationship to the defendant's activities and to the plaintiff's loss of customers or trade. The situation is essentially the same when misappropriation of the plaintiff's trade values is involved, except that the plaintiff may have suffered no pecuniary loss but the defendant rather may have obtained an unfair profit. For all these reasons, the place of injury does not play so important a role for choice-of-law purposes in the case of false advertising and the misappropriation of trade values as in the case of other kinds of torts. Instead, the principal location of the defendant's conduct is the contact that will usually be given the greatest weight

Cook admits that the 2019 Agreement provides that Utah law shall govern the Agreement.  Even assuming the injury occurred in Utah, however, as explained above, this factor is less important given the circumstances present here.  The conduct that caused the injury, if any, did not occur in Utah, it occurred in Tennessee.  As explained above, the <u>location</u> of the alleged conduct is given the greatest weight.  All of the defendants (other than Susan Corbo) have their principal place of business in Tennessee while the Plaintiff alone is in Utah.  Finally, the parties' relationship is more

heavily centered in Tennessee than in Utah.  The end result is that the most important factor, where the conduct occurred, weighs in favor of dismissal as do most of the other determinative factors. The burden on this Court to preside over the production of documents and examination of witnesses based almost exclusively in Tennessee will be difficult and is a needless draft on judicial efficiency; the burden on the Courts of Tennessee to do so is clearly less than what will be required of this Court, the parties, and their Tennessee lawyers.  Thus, the final factor of the *forum non conveniens* factor weighs in favor of dismissal.

Moreover, in deciding whether to dismiss, the overarching issue of fairness should not be forgotten.   Defendants allegedly appropriated Rain's confidential information (located in Tennessee) to produce in Tennessee products competitive with Rain's products; now Defendants are being asked to come to Utah to defend themselves because Plaintiff contends Utah is more convenient for it.  It is fundamentally unfair to hold Tennessee citizens liable under a legal system that they have not availed themselves of and otherwise have no reason to expect would govern their conduct in Utah.

Finally, the prevention of duplicative litigation and inconsistent decisions weighs in favor of dismissal.  Cook's claims against Rain will be brought in Tennessee.  Cook has not yet, nor should she be required to, assert her claims in Utah, but when she does, duplication of effort and the risk of inconsistent decisions or verdicts is certain.  Moreover, if the Court were to find jurisdiction over some but not all of the defendants, then Plaintiff would be forced to Tennessee to pursue its claims against the dismissed defendants, resulting in multiple claims across multiple jurisdictions stemming from the same alleged conduct.[3]  This duplication of effort and risk of inconsistent outcomes is further reason for dismissal.  The Second Circuit, for example, dismissed

---

[3] In this regard, it should be noted that the Fourth Judicial District of Utah County, Utah has already stated that Defendant Clayton Thomas is not subject to personal jurisdiction in Tennessee regarding Plaintiff's claims of tortious interference.

an action brought against Hungarian entities for their role in the Holocaust because a Hungarian court was the only venue where all of the litigation could be brought without duplicative litigation. *Fischer v. Magyar Allamvasutak Zrt*, 777 F.3d 847, 869 (2d Cir. 2015). The court was further persuaded to dismiss because an action pertaining to the same subject matter and parties was already pending in the foreign jurisdiction. *Id.* at 870.

Similarly, in *Dworkin v. Hustler Magazine, Inc.*, 647 F. Supp. 1278 (D. Wyo. 1986), the court dismissed an action for *forum non conveniens* where all Wyoming parties had been dismissed and other similar litigation was pending in California. The court was also persuaded that no witnesses lived in Wyoming and that New York law applied. In addition to considering these factors, the court also expressed concern that requiring a defendant to stand trial for defamation hundreds of miles from his home could have a chilling effect on First Amendment rights. *See also Westmoreland v. CBS*, 8 Med. L. Rptr. 2593 (D.C. S.C. 1982) (applying *Buckley v. New York Post Corp.*, 373 F.2d 175 (2d. Cir. 1967), which stated that protection of the First Amendment is a proper consideration when deciding venue).   Here, the chilling effect is present, as Plaintiff asks the Court to hale Defendants into Utah to prosecute and/or defend claims stemming from statements and/or conduct they made in a different state, hundreds of miles from their homes in Tennessee, with different laws.

This case belongs in Tennessee, where the Defendants live, where the alleged actions occurred, where the witnesses are, and where Defendants can fairly be made to answer for their alleged Tennessee conduct.  Utah should not be the place where Tennessee defendants are haled into court to defend what they are alleged to have done in Tennessee.

## IV.   CONCLUSION

For the foregoing reasons, Defendant Christina Rham Cook, individually and on behalf of Predicted Health Ventures, LLC and International Seed Nutrition Society, LLC, respectfully

request that the Court dismiss Plaintiff's claim against her and the above-named companies with prejudice.

DATED this 17th day of August, 2020.     **NEAL & HARWELL, PLC**

/s/ Philip Dr. Irwin_____
*Attorney for Defendants Christina Rahm Cook, Predicted Health Ventures, LLC and International Seed Nutrition Society, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed with the Court via the CM/ECF system, thereby effecting service on all counsel of record, on this 17th day of August, 2020.

/s/ Philip D. Irwin_____