FILED
2021 MAR 18 PM 12:22
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| RAIN INTERNATIONAL, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>CHRISTINA RAHM COOK *dba* MERCI DUPRE, LLC; PERSONALIZED HEALTHCARE SOLUTION, LLC *dba* BOOTHEEL LABS; SIMPLY WHOLEISTIC INC. *dba* ROOT, INC.; CLAYTON THOMAS *dba* ROOT WELLNESS; PREDICTED HEALTH VENTURES, LLC; INTERNATIONAL SEED NUTRITION SOCIETY, LLC; and DOES 1 through 5,<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS**<br><br>Case No. 2:20-cv-00537-JNP-DBP<br><br>District Judge Jill N. Parrish |

**INTRODUCTION**

Before the court is a Motion to Dismiss (ECF No. 16) filed by Defendants Christina Rahm Cook ("Cook"), Predicted Health Ventures, LLC ("Predicted Health"), and International Seed Nutrition Society, LLC ("International Seed") (collectively "Defendants"). Plaintiff Rain International, LLC ("Rain") brought this action in state court and asserted four causes of action against Cook: (1) breach of contract and the covenant of good faith and fair dealing; (2) fraudulent misrepresentation; (3) negligent misrepresentation; and (4) unjust enrichment (in the alternative). It also asserts a cause of action against all defendants for civil conspiracy. Defendants removed this action to federal court pursuant to 28 U.S.C. § 1332. They move to dismiss the claims against

them on three grounds: (1) that this court lacks personal jurisdiction over them; (2) that Rain lacks standing to sue; and (3) that dismissal is proper under the doctrine of *forum non conveniens.* For the reasons set forth herein, the court DENIES Defendant's Motion.

## BACKGROUND

### I. Facts Leading to the Dispute

Rain sells dietary supplements and personal care products "under [a] direct sales model through a network of individual distributors." ECF 7-1 ¶ 12–13. Rain hires individuals it views as qualified to assist in the development of its products. It alleges that its reputation depends in part on the qualifications of these individuals because their customers consider such qualifications when evaluating Rain's products.

Sometime before September 2016, Cook met with Ryan Fry ("Fry"), at the time a vice president of Rain, and agreed to act as a consultant regarding a skin-care product Rain was developing. Rain and Cook entered into a contract specifying as much in September 2016. In the negotiations leading up to the contract, Cook represented that she held a PhD in a scientific field and that "she had extensive scientific knowledge and work experience." *Id.* ¶ 20. Cook also presented Rain with documents, including a resume, that outlined her achievements and credentials. Rain alleges that it relied on this information in deciding to contract with Cook and did not learn until years later that these representations were false. Rain and Cook entered into additional agreements in February 2017, November 2017, and December 2019.[1] Rain alleges that

---

[1] These agreements gave Cook titles such as "Chief Scientific Advisor" and "Chief Director of the Scientific Advisory Board." ECF No. 7-1 ¶ 24. The agreements purported to create an independent contractor, and not an employer-employee, relationship. The court makes no determination as to what sort of relationship was created by the agreements.

Cook does not have a PhD, that she does not have extensive scientific knowledge, and that she otherwise misrepresented her credentials. Rain alleges that Cook's misrepresentations have harmed its reputation and goodwill among its customers.

Rain further alleges that rather than performing her duties under the contracts, Cook used Rain's resources to "gain Rain's highly confidential and competitive product information" to develop "products competitive with Rain." *Id.* ¶ 33. Rain alleges that Cook established International Seed and Predicted Health to aid the development and marketing of the competing products. All of this was done in violation of the non-compete and non-solicitation clauses contained in the February 2017, November 2017, and December 2019 agreements.

As a result of Cook's alleged misconduct, Rain brings this action and asserts five causes of action, four against Cook and one against all Defendants: (1) breach of contract and the covenant of good faith and fair dealing; (2) fraudulent misrepresentation; (3) negligent misrepresentation; (4) conspiracy (against all Defendants) and (5) unjust enrichment (in the alternative). Defendants move to dismiss the claims against them on three grounds: (1) that this court lacks personal jurisdiction over them; (2) that Rain lacks standing to sue; and (3) that dismissal is proper under the doctrine of *forum non conveniens*. The court first outlines facts relevant to the jurisdictional inquiry it must undertake to resolve Defendants' Motion.

**II.     Additional Facts Relevant to Jurisdiction**

Rain is a Delaware LLC headquartered in Utah. Cook resides in Brentwood Tennessee. Predicted Health is an inactive Wyoming LLC with its principal place of business in Brentwood, Tennessee. International Seed is a Missouri LLC with its principal place of business in Brentwood, Tennessee. Each of the September 2016, February 2017, and November 2017 contracts between Rain and Cook contained the following provision:

3

> Each of the Parties hereby consents to the exclusive jurisdiction of and venue in each of the state and federal courts located in the state of Utah for the adjudication of all matters relating hereto or arising hereunder.

ECF No. 7-5 at 6, 19; ECF No. 7-3 at 7. The December 2019 agreement contains no similar forum-selection clause. Outside of her business interactions with Rain, Cook has had little to no contact with the state of Utah. International Seed or Predicted Health apparently also lack connections to the state of Utah outside of the matters related to this case.

## DISCUSSION

### I.  Personal Jurisdiction

As the plaintiff, Rain bears the burden of establishing personal jurisdiction. *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011). When the issue of personal jurisdiction "is raised early on in litigation, based on pleadings (with attachments) and affidavits, that burden can be met by a *prima facie* showing." *Id.* For the purpose of determining whether Rain has made its *prima facie* showing of jurisdiction, the court must "resolve any factual disputes in the plaintiff's favor." *Id.* There are two potential grounds on which the court may exercise personal jurisdiction over Cook in this case: (1) the forum-selection clauses in her 2016 and 2017 agreements and (2) her contacts with the state of Utah and its residents. The court considers each in turn.

####   A.  Forum-Selection Clauses

As explained above, each of the September 2016, February 2017, and November 2017 contracts between Rain and Cook contain the following provision:

> Each of the Parties hereby consents to the exclusive jurisdiction of and venue in each of the state and federal courts located in the state of Utah for the adjudication of all matters relating hereto or arising hereunder.

4

ECF No. 7-5 at 6, 19; ECF No. 7-3 at 7. This court must "enforce a mandatory forum selection clause unless the party challenging it 'clearly show[s] that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *Niemi v. Lasshofer*, 770 F.3d 1331, 1351 (10th Cir. 2014) (alteration in original) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)).

Here, Cook does not argue that enforcement of these clauses would be unreasonable or unjust, or that they were procured by fraud. Rather, she argues that the November 2017 agreement was amended to remove the forum-selection clause. She also argues that the November 2017 agreement was "rendered null and void" by the December 2019 agreement.

The court is unpersuaded by Cook's arguments. First, while Cook states in her declaration that the parties amended the November 2017 agreement to remove the forum-selection clause, s*ee* ECF No. 16-1 at 7 (¶27), the amendment Cook offers as evidence does not support this assertion. *See* ECF No. 16-1 at 20–22. Rather, the amendment alters only Paragraph 6 of the November 2017 agreement, which is entirely unrelated to the issue of forum selection. Also, the amendment is signed only by Cook, not Rain. Second, the December 2019 agreement does not purport to nullify or void any of the prior agreements between the parties.[2] The 2019 agreement had no effect on the parties' obligations under the earlier agreements while those agreements were still in force. Thus, any claims arising from the breach of those agreements are subject to the relevant forum-selection

---

[2] Cook points to an email sent to her in January 2019 by Travis Parry ("Parry"), apparently an officer or employee of Rain, in which he stated that "[a]ll former contracts are considered NULL & VOID." ECF No. 16-1 at 33. But that email merely constituted a negotiation leading up to the final agreement in December 2019. The December 2019 agreement contains an "Entire Agreement" clause, which states that "[t]here are no representations, covenants, warranties or undertakings other than those expressly set forth in this agreement." *Id.* at 28. The court will therefore not consider Parry's email in interpreting the December 2019 agreement.

clause. The court will enforce those clauses and therefore may exercise personal jurisdiction over any claims brought against Cook arising from the September 2016, February 2017, and November 2017 contracts between Rain and Cook.

      B.      Cook's Other Contacts with Utah

While the forum-selection clauses described above give the court personal jurisdiction over Rain's contract claims against Cook arising under the September 2016, February 2017, and November 2017 agreements, Rain also sues Cook under the December 2019 contract[3] and for civil conspiracy, fraudulent misrepresentation, negligent misrepresentation, and unjust enrichment. The court must determine whether it may also exercise jurisdiction over these claims.

Cook argues that she lacks minimum contacts with the forum because the work she performed under the 2019 contract occurred in Tennessee and in the various foreign nations to which she traveled on behalf of Rain. She asserts that her limited trips to Utah do not suffice to make Utah the "focal point" of her alleged misconduct. ECF No. 16 at 13. She also argues that the mere fact that Rain felt the effects of her alleged misconduct in Utah is insufficient to give rise to personal jurisdiction because the "plaintiff cannot be the only link between the defendant and the forum." *Id.* (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)). Rain responds that much of Cook's conduct occurred either electronically or in-person in Utah. Specifically, Rain alleges Cook traveled to Utah to conduct business with Rain, at Rain's expense, at least thirteen times between April 25, 2018 and February 16, 2020. *See* ECF No. 22-2 ¶ 4. Further, it argues that Cook should

---

[3] While Rain does not specify under which contract it sues, the Complaint lists all of the agreements and asserts that "Cook breached her contracts with Rain by failing to conform to the terms of her agreement(s) . . . ." The court interprets this to mean that Rain is suing Cook for breaching each of their four contracts.

have reasonably anticipated being haled into court in Utah both by contracting with a Utah company and by intentionally misappropriating the confidential information of a company she knew was headquartered in Utah.

To determine whether it has personal jurisdiction over Cook, the court first evaluates whether exercising personal jurisdiction satisfies Utah's long-arm statute and second, whether exercising personal jurisdiction comports with principles of constitutional due process. *See Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999). Utah's long-arm statute "should be applied so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution." UTAH CODE § 78B-3-201(3). Therefore, the court need only address whether the exercise of personal jurisdiction over defendants comports with due process demands.

"The Supreme Court has held that, to exercise jurisdiction in harmony with due process, defendants must have 'minimum contacts' with the forum state, such that having to defend a lawsuit there would not 'offend traditional notions of fair play and substantial justice.'" *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). A defendant's contacts with the forum state may give rise to either general or specific personal jurisdiction. In this case, Rain argues only that Cook is subject to specific personal jurisdiction.

Specific jurisdiction entails a two-step inquiry. The court must consider "(a) whether the plaintiff has shown that the defendant has minimum contacts with the forum state; and, if so, (b) whether the defendant has presented a 'compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Old Republic Ins. Co. v. Continental*

*Motors, Inc.*, 877 F.3d 895, 904 (10th Cir. 2017) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–77 (1985)).

1) Minimum Contacts

"The minimum contacts test for specific jurisdiction encompasses two distinct requirements: (i) that the defendant must have 'purposefully directed its activities at residents of the forum state,' and (ii) that 'the plaintiff's injuries must arise out of [the] defendant's forum-related activities.'" *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 904 (10th Cir. 2017) (quoting *Shrader v. Biddinger*, 633 F.3d 1235, 1241 (10th Cir. 2011)).

a) Purposeful Direction—Tort Claims

For tort-based claims, purposeful direction may be established "when an out-of-state defendant's intentional conduct targets and has substantial harmful effects in the forum state." *Old Republic*, 877 F.3d at 907 (citing *Calder v Jones*, 465 U.S. 783, 790–91 (1984)). The Tenth Circuit has articulated a 'harmful effects' test that is satisfied when three elements are met: "(a) an intentional action . . . , that was (b) expressly aimed at the forum state . . . , with (c) knowledge that the brunt of the injury would be felt in the forum state." *Id.* (quoting *Dudnikov*, 514 F.3d at 1072).

This test emerged from the Tenth Circuit's interpretation of the Supreme Court's holding in *Calder v. Jones*, 465 U.S. 783 (1984). In *Calder*, the plaintiff, Shirley Jones, brought a libel action in California state court against the editors of a magazine who were citizens of Florida. The Supreme Court held that the defendants had minimum contacts with California such that California courts could properly exercise personal jurisdiction over the defendants. It reasoned:

> The allegedly libelous story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California. The article was drawn from California

> sources, and the brunt of the harm, in terms both of respondent's emotional distress and the injury to her professional reputation, was suffered in California. In sum, California is the focal point both of the story and of the harm suffered. Jurisdiction over petitioners is therefore proper in California based on the effects of their Florida conduct in California.

*Id.* at 788–89 (citations and internal quotation marks omitted). The Tenth Circuit, interpreting *Calder*, found that jurisdiction was proper in Colorado where out-of-state defendants had sent a letter to eBay at its California headquarters intended to stop the sale of the Colorado plaintiffs' goods. *Dudnikov*, 514 F.3d at 1067. Even though the defendants had sent the letter outside of the forum, they knew that the plaintiffs were based in Colorado and that the brunt of the injury would be felt in Colorado. *Id.* at 1075–76, 78.

But the "plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). In *Walden*, the defendant, a Georgia police officer, wrongfully seized money from a Nevada couple at a Georgia airport. *Id.* at 280–81. At issue was whether a Nevada court could exercise jurisdiction over claims against the defendant for false statements he made in his probable cause affidavit, which he submitted to the U.S. Attorney's office in Georgia. *Id.* at 280–81, 282. The Supreme Court held that, on these facts, jurisdiction was improper—it was not enough that the defendant knew that plaintiffs were Nevada citizens when he submitted the affidavit. His only contacts with Nevada were the plaintiffs, and "[d]ue process requires that a defendant be haled into court in a forum state based on his own affiliation with the state, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the state." *Id.* at 286 (quoting *Burger King*, 471 U.S. at 475). Thus, defendant's "suit-related conduct" did not create a "substantial connection" with the forum state." *Id.* at 284.

Here, Cook purposefully directed her allegedly tortious conduct at the state of Utah. The alleged conduct that forms the basis for Rain's tort claims—Cook's misrepresentations regarding her credentials and experience—were intentional acts. Cook knew that Rain was located in Utah, and by misrepresenting her credentials, she expressly aimed her conduct at the forum. In fact, some of the tortious conduct alleged occurred while Cook was physically present in Utah. Unlike in *Walden*, where all of the defendant's relevant conduct occurred in Georgia with plaintiffs who happened to be from Nevada, Cook met with Rain in Utah and engaged in arm's length negotiations, at which time she allegedly lied about her education and work experience. *See* ECF No. 16 at 7 (¶ 6). Thus, Cook's contacts with the forum were not "random, fortuitous, or attenuated." *Walden*, 571 U.S. at 286 (quoting *Burger King*, 471 U.S. at 475). Rather, Cook traveled to Utah and entered into a business agreement with a Utah company based on allegedly false representations. Finally, Cook knew that the brunt of any injury caused by her alleged fraudulent misrepresentations would be felt where Rain was located—Utah. Under these circumstances, she could reasonably expect to be haled into court in Utah.

b) Purposeful Direction—2019 Contract Claims

For contract claims, the Tenth Circuit has explained that the purposeful direction analysis "looks to the out-of-state defendant's 'continuing relationships and obligations with citizens of [the forum state].'" *Old Republic*, 877 F.3d at 905 (alteration in original) (quoting *Burger King*, 471 U.S. at 473). "[A] defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id.* (alteration in original) (quoting *Walden*, 571 U.S. at 286). But when a defendant "purposefully 'reach[es] out beyond' their State and into another by, for example, entering a contractual relationship that 'envision[s] continuing and wide-reaching contacts' in the forum State," the Supreme Court has upheld the assertion of personal jurisdiction.

*Walden*, 571 U.S. at 285 (quoting *Burger King*, 471 U.S. at 479–80). Courts look to the parties' "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing," to determine "whether the defendant purposefully established minimum contacts with the forum." *Old Republic,* 877 F.3d at 905. Finally, while a defendant's "physical presence in the forum is not a prerequisite to jurisdiction, physical entry into the State . . . is certainly a relevant contact." *Walden*, 571 U.S. at 285 (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 773–74 (1984).

Cook's entering into the December 2019 contract with Rain also constituted purposeful direction toward the forum. The contract was not for a one-off sale of a good or performance of a one-time service. Rather, the contract envisioned "continuing relationships and obligations" with Rain. *Old Republic*, 877 F.3d at 905 (alteration in original) (quoting *Burger King*, 471 U.S. at 473). Under the contract, Cook was to "[p]rovide support to [Rain] by attending the weekly and monthly management meetings . . . , assume the position of Chief Scientific Officer," and continue performing various duties for the company that she had already undertaken under her prior contracts. ECF No. 16-1 at 23 (¶ 2). In exchange, Rain was to pay her a significant monthly salary in addition to royalties and other expenses. *Id*. at 24–25 (¶ 3). And turning to the actual course of dealing of the parties, Cook traveled to Utah, on Rain's business and at Rain's expense, at least twice after the December 2019 contract was executed. *See* ECF No. 22-2 at 5. Not only does this exhibit a continued relationship with the forum, it also means that she physically entered the state.[4] *Walden*, 571 U.S. at 285 ("physical presence in the forum is not a prerequisite to jurisdiction,

---

[4] These two trips were in addition to the several other trips she made to Utah before the execution of the December 2019 contract. *See* ECF No. 22-2 at 5.

11

physical entry into the State . . . is certainly a relevant contact" (citing *Keeton*, 465 U.S. at 773–74). Based on the foregoing, the court concludes that Cook purposefully directed her conduct, related to both the tort and contract claims, at Utah.[5]

c) Arising Out Of

The second consideration in the minimum contacts analysis is whether the defendant's contacts with the forum state give rise to the plaintiff's claim. "In order for a court to exercise specific jurisdiction over a claim, there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1781 (2017) (citation and alterations omitted). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id.* Here, although she disputes that her conduct was directed at the forum, Cook does not contend that Rain's injury did not arise from the conduct outlined above.

2) Fair Play and Substantial Justice

When a party has the requisite minimum contacts with the forum state, "it is incumbent on defendants to present a compelling case that the presence of some other considerations would

---

[5] The court also concludes that it may exercise jurisdiction over Rain's unjust enrichment claim against Cook because it is based on the same nucleus of operative facts as its contract claims. *See United States v. Botefuhr*, 309 F.3d 1263, 1272 (10th Cir. 2002) (explaining that courts may exercise personal jurisdiction over a defendant on a claim where the court has jurisdiction over one claim and the second claim arises from the same nucleus of operative facts). The court likewise may exercise personal jurisdiction over Rain's conspiracy claims against Defendants. A court may exercise personal jurisdiction over a civil conspiracy claim where the conspiracy was targeted at the forum. *See Newsome v. Gallacher*, 722 F.3d 1257, 1265–66 (10th Cir. 2013) (affirming exercise of personal jurisdiction even where the conspiracy "[took] place entirely outside of the forum, but with the conspirators' knowledge that the forum would bear the brunt of the conspiracy's harmful effect.").

12

render jurisdiction unreasonable." *Dudnikov*, 514 F.3d at 1080 (citation omitted). Whether jurisdiction "is so unreasonable as to violate 'fair play and substantial justice'" depends on five factors: "(1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies." *Newsome, 722 F.3d at 1271*.

Here, Cook did not raise any of these factors in her Motion to Dismiss. The court therefore finds that she has not met her burden to show that the court's exercise of jurisdiction over her would be unfair or unreasonable.

## II.  Standing

Cook also contends that Rain lacks standing to sue. She asserts that Rain has existed as three separate legal entities since its inception: as an LLC organized under Delaware law from September 2011 to December 2018, as a Utah LLC from June 2019 to April 2020, and again as a Delaware LLC from April 2020 to the present. She argues that because Rain is suing under the December 2019 contract—a contract executed while Rain was a Utah LLC—it lacks standing to sue because it is now a different entity, a Delaware LLC. See ECF No. 16 at 15 ("The Plaintiff in this case is a stranger to [the December 2019] contract, has no interest in it, and as a result, lacks standing to bring this suit . . . ."). Rain responds that it "continues to be the same Delaware limited liability company formed in 2011[ ] that entered into the 2016 and 2017 contracts with Cook." ECF No. 22 at 13. Jeff Aldous, Rain's General Counsel, testified that Rain "created a Utah [LLC] with the same name as Plaintiff for purposes of exploring potential corporate structure arrangements," but that Rain later decided not to pursue that option and "administratively dissolved the entity." ECF No. 22-2 at 3 (¶ 10).

13

The evidence before the court does not support Cook's contention. Testimony from Rain's general counsel is that Rain has been organized as the same Delaware corporation during all periods relevant to its claims.[6] Moreover, Cook cites no authority to support her contention that the same or successor entity loses standing to sue when it re-organizes under the laws of a different jurisdiction. Cook apparently concedes the imprudence of her position when she states in her reply brief that there is a "clear unity of interest and ownership between [Rain-Delaware and Rain-Utah]" and that "[b]oth Rain-Delaware and Rain-Utah are, as a practical matter, the same company . . . ." ECF No. 23 at 5. She also states that "regardless [of] when the entities legally operated, the same Rain corporate officers including Travis Parry, Jeffrey Aldous, Steve Bunker, and Byron Belka were involved in the negotiation" of both the 2017 and 2019 agreements. *Id.* at 6. Cook cannot argue on the one hand that the entities are so different that Rain has no standing to sue and on the other that the entities are so similar that Cook contracted with the same party in 2017 and 2019. The court concludes that Rain has standing to bring this action.

### III.     *Forum non conveniens*

Finally, Cook moves to dismiss this action on the basis of *forum non conveniens*, arguing that Tennessee is the proper forum to litigate this case. As a preliminary matter, both parties cite Utah state law in support of their arguments regarding *forum non conveniens*. But federal, not state, law governs the issue of *forum non conveniens* in federal court. *Rivendell Forest Prods., Ltd. v. Can. Pacific Ltd.*, 2 F.3d 990, 992 (10th Cir. 1993). This is true even where, as here, the parties' contract provides that a particular state's laws will govern the contract because such provisions do

---

[6] In evaluating a motion to dismiss for lack of jurisdiction or standing, the court resolves all factual disputes in favor of the plaintiff. *See Shrader*, 633 F.3d at 1239.

not apply to procedural matters. *See Fed. Deposit Ins. Corp. v. Petersen*, 770 F.2d 141, 142–43 (10th Cir. 1985).

Ordinarily, when a party in federal court seeks to litigate in a more convenient forum, it moves to transfer venue under 28 U.S.C. § 1404(a). Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." Here, Cook does not move the court to transfer the case under Section 1404(a); rather, as explained above, she moves to dismiss the case entirely under the common law doctrine of *forum non conveniens*.

It is questionable whether the common law doctrine of *forum non conveniens* applies where a party wishes to litigate in a different forum within the United States. *See Overseas Military Sales Corp. v. Md. Port Admin.*, No. 08-5474 (JBS/AMD), 2009 WL 3756667, at *1 (D.N.J. November 5, 2009) ("The United States Supreme Court has left open the question of whether *forum non conveniens* can be used in cases in which the alternative forum is a state court." (citing *Sinochem Int'l Co. Ltd. V. Malaysia Int'l. Shipping Corp.*, 549 U.S. 422, 430 (2007))). The Tenth Circuit has explained that the doctrine of *forum non conveniens* "is not applicable if American law controls." *Rivendell*, 2 F.3d at 994 (citing *Needham v. Phillips Petroleum Co. of Norway*, 719 F.2d 1481, 183 (10th Cir. 1983)). The Supreme Court has likewise declared that the doctrine "has continuing application [in federal courts] only in cases where the alternative forum is abroad." *Am. Dredging Co. v. Miller*, 510 U.S. 443, 449 n.2 (1994).

While the Supreme Court later suggested in dicta that the doctrine applies "perhaps in rare instances where a state or territorial court serves litigational convenience best," *Sinochem* 549 U.S.

15

at 430,[7] the Tenth Circuit has continued to impose the threshold requirement that foreign law control a case before applying the doctrine of *forum non conveniens*. *See, e.g., Archangel Diamond Corp. Liquidating Tr. v. Lukoil*, 812 F.3d 799, 804 (Tenth Cir. 2016) ("There are two threshold requirements for a forum non conveniens dismissal. First there must be an 'adequate alternative forum where the defendant is amenable to process . . . .' Second, 'the court must confirm that foreign law is applicable.'"); *accord. Fireman's Fund Ins. Co. v. Thyssen Mining Constr. Of Can., Ltd.*, 703 F.3d 488, 495 (10th Cir. 2012). Several district courts in the Tenth Circuit have recently denied motions to dismiss based on *forum non conveniens* where domestic law applied and the alternate forum was another state. *See Tig Ins. Co. v. Fki Indrus.*, No. 18-CV-00264-GKF-FHM, 2020 WL 5913827, at *3–4 (N.D. Okla. October 6, 2020); *Lexington Ins. Co. v. Newbern Fabricating, Inc.*, No. 14-CV-0610-CVE-TLW, 2015 WL 3911305, at *7 (N.D. Okla. June 25, 2015); *Brannan v. Unified Sch. Dist. 211*, No. 11-1128-EFM, 2011 WL 3203916, at *2 (D. Kan. July 27, 2011); *MBF Tr. v. Castaway Mfg., Inc.*, No. 10-CV-402-GKF-FHM, 2010 WL 4636704, at *4 (N.D. Okla. Nov. 4, 2010).

In this case, domestic law applies and the alternate forum is Tennessee. Thus, it is questionable whether a motion to dismiss on the grounds of *forum non conveniens* is even appropriate. The court need not decide that issue, however, because even if such a motion were appropriate, dismissal on *forum non conveniens* grounds is not warranted. "[T]here is a strong presumption in favor of hearing the case in the plaintiff's chosen forum." *Gschwind v. Cessna*

---

[7] The Supreme Court also stated in dicta that *forum non conveniens* is the proper way to enforce a forum-selection clause that designates a state court as the exclusive forum for litigation. *See Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 60 (2013). But that case is inapplicable here because there is no forum-selection clause mandating Tennessee state court as the exclusive forum for litigation.

*Aircraft Co.*, 161 F.3d 602, 606 (10th Cir. 1998) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981)). "That presumption is overcome 'only when [ ] private and public interest factors clearly point towards trial in the alternative forum.'" *Id.* (quoting *Piper*, 454 U.S. at 255). The private interest factors courts consider are:

> (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for compelling attendance of witnesses; (3) cost of obtaining attendance of willing non-party witnesses; (4) possibility of a view of the premises, if appropriate; and (5) all other practical problems that make trial of the case easy, expeditious, and inexpensive.

*Id.* (citation omitted). The public interest factors include:

> (1) administrative difficulties of courts with congested dockets which can be caused by cases not being filed at their place of origin; (2) the burden of jury duty on members of a community with no connection to the litigation; (3) the local interest in having localized controversies decided at home; and (4) the appropriateness of having diversity cases tried in a forum that is familiar with the governing law.

*Id.* (citation omitted).

Here, it is clear that Cook has not overcome the strong presumption in favor of Rain's choice of forum.[8] As for the private interest factors, many of the sources of proof in this case will be electronic. And while Defendants have identified several potential non-party witnesses who live in Tennessee, Plaintiff has identified several witnesses in Utah. The court can identify no "practical problems" sufficiently severe to overcome the strong presumption in favor of the plaintiff's chosen

---

[8] While the parties briefed the factors Utah state courts apply to determine *forum non conveniens* issues, there is broad overlap between the state and federal factors. *See Energy Claims Ltd. v. Catalyst Inv. Grp. Ltd.*, 325 P.3d 70, 80 (Utah 2014).

forum.[9] As for the public interest factors, none of the first three weighs definitively in either direction. But the fourth factor clearly weighs in favor of Utah, as Utah law governs all of the contracts between Rain and Cook. Thus, while litigation in either forum would likely be feasible, nothing suggests that Tennessee would be so preferable as to overcome the strong presumption in favor of Plaintiff's chosen forum, Utah.[10]

## CONCLUSION

For the foregoing reasons, the court DENIES Defendants' Motion to Dismiss.

DATED March 18, 2021.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge

---

[9] For claims arising under contracts with forum-selection clauses, courts apply only the public interest factors, not the private interest ones. *See Atl. Marine Constr.*, 571 U.S. at 63–64. Thus, for Rain's claims arising under the September 2016, February 2017, and November 2017 agreement, which designate Utah as the exclusive forum to litigate such claims, the private interest factors are deemed to weigh in favor of Utah.

[10] It should be noted that even were the court to construe Cook's motion to dismiss for *forum non conveniens* as a motion to transfer venue under Section 1404(a), the outcome would be the same. The factors courts consider in evaluating motions to transfer venue under Section 1404(a) are substantially the same as the factors the court considered here. *See Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010) (listing the discretionary factors courts weigh in evaluating Section 1404(a) motions).